**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| INTERNATIONAL HOUSE OF PANCAKES, LLC, IHOP RESTAURANTS LLC, and IHOP LEASING LLC, | ) ) ) ) |
| Plaintiffs, | ) ) |
| | )     Case No. |
| v. | ) ) |
| SUHEIL A. AJAJ, | ) ) |
| Defendant. | ) ) |

**COMPLAINT**

Plaintiffs International House of Pancakes, LLC, IHOP Restaurants LLC, and IHOP Leasing LLC (collectively, "IHOP"), by and through counsel, and for their Complaint against Defendant Suheil A. Ajaj ("Defendant" or "Ajaj"), allege as follows:

**JURISDICTION**

1.      This Court has original subject-matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338, and 1367 because this is a civil action involving claims arising under the laws of the United States relating to trademarks and all other claims in the action are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy. This Court also has original subject-matter jurisdiction over this action under 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

2.      This Court has personal jurisdiction over Defendant because he is an individual who resides in, is a citizen of, and conducts business in the State of Illinois.

## INTRODUCTION AND NATURE OF THE ACTION

3.　　Defendant entered into a franchise agreement with IHOP Restaurants LLC, a separate sublease, and a separate equipment lease related to a franchised IHOP® restaurant in Matteson, Illinois.　Through the franchise agreement, Defendant promised to operate the restaurant in accordance with the standards and requirements of the Franchise Agreement.

4.　　But between July 30, 2014, and February 10, 2015, Defendant failed multiple inspections of the restaurant, including two Operational Evaluations and two consecutive Operational Assessment Reports.　Within IHOP's franchisee grading system, Defendant received an "F" ranking for the second half of 2014.　This ranking and Defendant's consistently poor evaluations confirmed Defendant's failure to adhere to IHOP's standards and requirements, including its Operations Bulletins.

5.　　On November 13, 2014, a day after Defendant failed an Operational Assessment Report, IHOP conducted a field audit of the restaurant.　That audit revealed that over the course of a three-and-a-half year period from 2009 to 2012 Defendant systematically under-reported his gross sales.　He did this principally through "Negative Guest Checks," which in essence act a as refund and voided sale and reduce a restaurant's gross sales.　The audit revealed over 1,000 Negative Guest Checks during this period.

6.　　Based on Defendant's demonstrated failure to adhere to IHOP's standards and requirements and his willful and egregious under-reporting of gross sales, IHOP properly terminated the franchise agreement, sublease, and equipment lease for the restaurant by notice dated February 20, 2015, and effective March 7, 2015.

7.　　Consequently, Defendant was required to stop operating an IHOP® restaurant (i.e., stop using IHOP's trademarks and system) and to turn over the restaurant's premises to its

sublandlord, IHOP Leasing LLC. Despite these clear obligations, Defendant has refused to abide by them and has confirmed he will not do so and still wrongfully operate the restaurant under the IHOP® marks and is wrongfully profit from IHOP's marks, goodwill, and system.

8. In this lawsuit, IHOP seeks, among other things, a preliminary injunction enjoining Defendant's unlawful use of IHOP's marks and system, an order giving IHOP possession of the premises, compelling arbitration, damages for Defendant's infringing and other wrongful conduct, and the attorneys' fees and costs IHOP has incurred and will incur in prosecuting this action.

## THE PARTIES

9. Plaintiff International House of Pancakes, LLC ("IHOP LLC") is a Delaware limited-liability company with its principal place of business in Glendale, California. IHOP LLC's sole member is DineEquity, Inc., a Delaware corporation with its principal place of business in Glendale, California. IHOP LLC is the successor in interest to International House of Pancakes, Inc. with respect to the franchise agreement with Defendant for the restaurant.

10. IHOP Restaurants LLC ("IHOP Restaurants") is a Delaware limited-liability company with its principal place of business in Glendale, California. The sole member of IHOP Restaurants is IHOP Funding LLC, a Delaware limited-liability company with its principal place of business in Glendale, California. The sole member of IHOP Funding LLC is IHOP SPV Guarantor LLC, a Delaware limited-liability company with its principal place of business in Glendale, California. The sole member of IHOP SPV Guarantor LLC is Counterclaimant IHOP LLC. IHOP Restaurants is the successor in interest to IHOP Franchising LLC, which is successor in interest to IHOP Restaurants, Inc., with respect to the equipment lease for the

restaurant. IHOP Restaurants is also the successor in interest to IHOP IP, LLC with respect to relevant ownership rights of certain intellectual property licensed to Defendant.

11. Plaintiff IHOP Leasing LLC ("IHOP Leasing") is a Delaware limited-liability company with its principal place of business in Glendale, California. The sole member of IHOP Leasing is IHOP Funding LLC, a Delaware limited-liability company with its principal place of business in Glendale, California. The sole member of IHOP Funding LLC is IHOP SPV Guarantor LLC, a Delaware limited-liability company with its principal place of business in Glendale, California. The sole member of IHOP SPV Guarantor LLC is Plaintiff IHOP LLC. IHOP Leasing is the successor in interest to IHOP Properties LLC, which is successor in interest to IHOP Properties, Inc., with respect to the sublease for the restaurant.

12. Defendant Ajaj is resident and citizen of the State of Illinois.

**VENUE**

13. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(1) because Defendant resides in the Northern District of Illinois. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted in this Complaint occurred in this judicial district.

**FACTS GIVING RISE TO THE COMPLAINT**

**The IHOP® System and Trademarks**

14. IHOP is a franchisor of nationally recognized restaurants, serving pancakes and other breakfast items, as well as lunch and dinner items, at affordable prices and convenient hours and locations.

15. IHOP Restaurants has adopted and used in interstate commerce, and licensed to IHOP Franchising LLC certain trademarks (the "Marks"), which have been registered with the

United States Patent and Trademark Office, in connection with the operation of IHOP®
restaurants.

16. IHOP Restaurants has engaged IHOP LLC as servicer to enforce their rights and perform their duties and obligations with respect to certain assets, including the Marks licensed for use by franchisees. Among the Marks are the following:

| Registration No. | Registration Date |
|---|---|
| 2,332,311 | March 21, 2000 |
| 2,654,144 | November 26, 2002 |
| 2,846,136 | May 25, 2004 |
| 2,942,609 | April 19, 2005 |
| 3,003,423 | October 4, 2005 |
| 3,408,102 | April 8, 2008 |
| 3,429,404 | May 20, 2008 |
| 3,429,405 | May 20, 2008 |
| 3,429,406 | May 20, 2008 |
| 3,429,408 | May 20, 2008 |
| 3,433,996 | May 27, 2008 |
| 3,433,997 | May 27, 2008 |
| 3,507,059 | September 30, 2008 |
| 3,514,724 | October 14, 2008 |
| 3,526,262 | November 4, 2008 |
| 3,526,263 | November 4, 2008 |
| 3,603,073 | April 7, 2009 |
| 3,616,420 | May 5, 2009 |

| Registration No. | Registration Date |
|---|---|
| 3,616,421 | May 5, 2009 |
| 3,705,677 | November 3, 2009 |
| 3,731,730 | December 29, 2009 |
| 3,743,560 | February 2, 2010 |
| 3,771,927 | April 6, 2010 |
| 3,822,209 | July 20, 2010 |
| 3,923,246 | February 22, 2011 |
| 3,985,927 | June 28, 2011 |
| 4,015,959 | August 23, 2011 |
| 4,025,593 | September 13, 2011 |
| 4,026,923 | September 13, 2011 |
| 4,036,165 | October 4, 2011 |
| 4,036,166 | October 4, 2011 |
| 4,036,294 | October 4, 2011 |
| 4,050,866 | November 1, 2011 |
| 4,094,780 | June 31, 2012 |
| 4,111,120 | March 13, 2012 |
| 4,151,113 | May 29, 2012 |
| 4,168,136 | July 3, 2012 |
| 4,226,503 | October 16, 2012 |
| 4,226,504 | October 16, 2012 |
| 4,281,615 | January 29, 2013 |
| 4,281,618 | January 29, 2013 |
| 4,393,443 | August 27, 2013 |
| 4,407,990 | September 24, 2013 |

| Registration No. | Registration Date |
|---|---|
| 4,407,992 | September 24, 2013 |

17.     IHOP has used the Marks to identify its business activities and products in interstate commerce in connection with IHOP® restaurants. The Marks are intended to distinguish IHOP's activities in this regard from those who are not so authorized. IHOP and its authorized franchisees have used and continue to use the Marks to identify their goods and services in interstate commerce in connection with IHOP® restaurants. IHOP spends substantial sums for advertising and promotion of the IHOP® Marks. IHOP has prominently displayed the Marks on outdoor signs, Internet websites, television advertising, and social media throughout the United States. IHOP has acquired a valuable reputation and goodwill among the public as a result of such consumer association with the Marks. The Marks have developed a secondary meaning associating them with IHOP. The Marks are distinctive, widely recognized, and engender a substantial amount of goodwill.

18.     Franchise agreements govern the relationships between IHOP and its franchisees, and grant franchisees the right to use IHOP's Marks in their operation of IHOP® restaurants at locations specified in their franchise agreements and on the terms expressed in the franchise agreements. In exchange for these and other benefits and services, IHOP receives payments from its franchisees.

**Defendant's IHOP® Franchise Agreement**

19.     On or about March 27, 2002, IHOP Restaurant's predecessor in interest, International House of Pancakes, Inc, entered into a franchise agreement (the "Franchise Agreement") with Defendant, which granted Defendant the right to operate an IHOP® restaurant located at 20900 Cicero Avenue, Matteson, Illinois 60443, also known as IHOP # 5413 (the

"Restaurant") on the terms set forth in the agreement. A true and correct copy of the Franchise Agreement for the Restaurant is attached to this Complaint as **Exhibit A** and is fully incorporated by reference.

20.     As set forth more fully in the Franchise Agreement, the Franchise Agreement allowed Defendant to operate an IHOP® restaurant using IHOP's Marks and system.

21.     Pursuant to a Clarification/Modification Letter International House of Pancakes, Inc. and IHOP Properties, Inc. entered into with Defendant on August 7, 2002, the Franchise Agreement expired on December 30, 2026, unless terminated earlier. A true and correct copy of the Clarification/Modification Letter for the Restaurant is attached to this Complaint as **Exhibit B** and is fully incorporated by reference.

22.     In the Franchise Agreement, Defendant agreed to comply with IHOP's standards, specifications, and Operations Bulletins:

10.03  Compliance with Franchisor's Specifications.

(a)  All food products, services, supplies, equipment, and materials, including standardized numbered guest checks and menus, permitted or required to be used in the operation of the Franchised Restaurant shall be in full compliance with the specifications set forth in the Operations Bulletins . . . .

. . .

10.05  Compliance with Applicable Laws and Operations Bulletins.

Franchisee shall operate the Franchised Restaurant in strict compliance with all Applicable Laws and with the standard procedures, policies, rules and regulations established by Franchisor and incorporated herein, or in Franchisor's Operations Bulletins. Such standard procedures, policies, rules and regulations established by Franchisor may be revised from time to time as circumstances warrant, and Franchisee shall strictly comply with all such procedures as they may exist from time to time as though they were specifically set forth in this Agreement and when incorporated in Franchisor's Operations Bulletins the same shall be

deemed incorporated herein by reference. By way of illustration and without limitation, such standard procedures, policies, rules and regulations may or will specify accounting records and information, payment procedures, specifications for required supplies and purchases, including Trademarked Products, hours of operation, advertising and promotion, cooperative programs, specifications regarding required insurance, minimum standards and qualifications for employees, design and color of uniforms, menu items, methods of production and food presentation, including the size and serving thereof, standards of sanitation, maintenance and repair requirements, specifications of furniture, fixtures and equipment, flue cleaning, and fire prevention service, appearance and cleanliness of the premises, accounting and inventory methods and controls, forms and reports, and in general will govern all matters that, in Franchisor's judgment, require standardization and uniformity in all IHOP Restaurants. Franchisor or its Affiliate will furnish Franchisee with Franchisor's current Operations Bulletins upon the execution of this Agreement.

Ex. A, ¶¶ 10.03, 10.05.

23. The Franchise Agreement defines "Operations Bulletins" to mean "the Franchisor's Operations Manual, and all bulletins, notices, and supplements thereto, and all ancillary manuals, as the same may be amended and revised from time to time." Ex. A, ¶ 1.02.

24. The Operations Bulletins includes a manual entitled "SOP: Franchise Operating Procedures & Standards."

25. The Operations Bulletins includes a manual entitled "Core Line Recipes."

26. The Operations Bulletins includes a manual entitled "Core Prep Recipes."

27. The manuals entitled "SOP: Franchise Operating Procedures & Standards," "Core Line Recipes," and "Core Prep Recipes" are (and were at all relevant times) available to Defendant on the password-protected, restricted site www.ihopconnect.com, and were available to Defendant.

28.     Under the Franchise Agreement, Defendant agreed to pay IHOP regular royalties based off his "Gross Sales." Ex. A, ¶ 6.01(a). The Franchise Agreement defined "Gross Sales" as:

> [T]he total revenues derived by Franchisee in and form the Franchised Restaurant, whether for cash sales of food and other merchandise or otherwise, or charge sales thereof, or revenues from any source arising out of the operation of the Franchised Restaurant, deducting therefrom: (a) all refunds and allowances, if any; (b) any sales or excise taxes which are separately stated and which Franchisee collects from customers and pays to any federal, state or local taxing authority; and (c) any amounts deposited in any vending machines or pay telephones which are located in or about the Franchised Restaurant, if said vending machines and/or pay telephones are leased and not owned by Franchisee, in which case Gross Sales shall include only the commissions Franchisee receives therefrom.

Ex. A, ¶ 1.02.

29.     At all relevant times, Defendant was required under the Franchise Agreement to maintain accurate records of the sales at the Restaurant, including providing IHOP with copies or access to the Restaurant's cash register and/or point-of-sale records. Ex. A, ¶ 6.02.

30.     The Franchise Agreement permitted IHOP to terminate the Franchise Agreement after providing notice of Material Breach and following Defendant's failure to cure such Material Breach within seven (7) days. Ex. A, ¶ 12.01.

31.     The Franchise Agreement defines "Material Breach" to include "a failure to comply with Franchisor's Operations Bulletins as described in paragraph 10.05." Ex. A, ¶ 12.01(g).

32.     Additionally, the Franchise Agreement permitted IHOP to terminate the Franchise Agreement without prior notice to Defendant for, among other things, "[Defendant's] knowingly withholding the rendering or reporting of [Defendant's] Gross Sales." Ex. A, ¶ 12.02(a).

33.     Defendant agreed that, upon termination of the Franchise Agreement, he would, among other things, discontinue use of the Marks and would not operate or do business under any name or in any manner that might give the impression to the general public that he was operating an authorized IHOP® restaurant.  Ex. A, ¶¶ 8.09, 16.02.

34.     In the Franchise Agreement, Defendant agreed to the following arbitration provision:

> Subject to Section 13.01(b), any controversy or claim, except those described in paragraph 13.03, arising out of or relating to this Agreement, or any agreement relating thereto, or any breach of this Agreement including any claim that this Agreement or any portion thereof is invalid, illegal or otherwise voidable, shall be submitted to arbitration before and in accordance with the commercial rules of the American Arbitration Association provided that the jurisdiction of the arbitrators shall be limited to a decision rendered pursuant to California common and statutory law and judgment upon the award may be entered in any court having jurisdiction thereof; provided, however, that this clause shall not limit Franchisor's or its Affiliate's right to obtain any provisional remedy, including injunctive relief, or to obtain writs of recover of possession, or similar relief, from any court of competent jurisdiction, as Franchisor or its Affiliate deems to be necessary or appropriate in Franchisor's or such Affiliate's sole subjective judgment, to compel Franchisee to comply, or to prohibit Franchisee's non-compliance, with its obligations hereunder or under the sublease, if applicable, or to obtain possession of the Franchised Location, or to protect the Trademarks or other property rights of Franchisor.  Franchisor or such Affiliate may, as part of such action or proceeding, seek damages, costs and expenses caused to or incurred by it by reason of the act or action or non action of Franchisee which caused Franchisor or such Affiliate to institute such action or proceeding.  The institution of any such action or proceeding by Franchisor or its Affiliate shall not be deemed a waiver on its part to institution of an arbitration proceeding pursuant to the provisions of this Article.

Ex. A, ¶ 13.01(a).

## The Sublease

35.     On or about March 27, 2002, IHOP Leasing (successor in interest to IHOP Properties, Inc.) and Defendant entered into a Sublease related to the premises of the Restaurant. A true and correct copy of the Sublease is attached to this Complaint as **Exhibit C** and is fully incorporated by reference.

36.     The Sublease provided for termination of the Sublease, at IHOP's option, in the event of termination of the Franchise Agreement.  Ex. C, ¶ 1.3.

37.     The Sublease also provided that upon Defendant's breach of the Franchise Agreement or Sublease, IHOP could, among other things, terminate the Sublease and obtain possession of the Restaurant premises.  Ex. C, ¶ 8.1.

38.     Upon termination of the Sublease, Defendant was required to "promptly return the Premises to Sublandlord in as good condition as when received, reasonable wear and tear excepted." Ex. C, ¶ 3.1.

## The Equipment Lease

39.     On or about March 27, 2002, IHOP Restaurants (successor in interest to International House of Pancakes, Inc.) and Defendant entered into an Equipment Lease related to various pieces of equipment to be used in the operation of the Restaurant.  A true and correct copy of the Equipment Lease is attached to this Complaint as **Exhibit D** and is fully incorporated by reference.

40.     The Equipment Lease provided, "The term of this Lease shall commence on the date of possession by Lessee of the IHOP Restaurant and continue for a term coincident with that of the Sublease executed concurrently herewith." Ex. D, ¶ III.

41. The Equipment Lease identified the remedies upon Defendant's default, including, but not limited to, IHOP's right of possession of the covered equipment:

**VIII**
**REMEDIES OF LESSOR ON DEFAULT**

Upon default in the payment of any installment of rent, upon a breach of any other condition of this Lease to be performed or observed by the Lessee . . . of if the Lessee discontinues business at his or her present address, the Lessor shall have the right, in addition to all other remedies at law or in equity, without notice or demand, to terminate this Lease and to enter upon the premises and remove the Personal Property therefrom.

Ex. D, ¶ VIII.

### Defendant's Breaches of the Franchise Documents

42. IHOP has performed all of its obligations under the Franchise Agreement, Sublease, and Equipment Lease (collectively, the "Franchise Documents").

43. Meanwhile, Defendant failed to perform his obligations under the Franchise Documents.

44. Among other things, Defendant repeatedly failed to comply with IHOP's Operations Bulletins in violation of section 10.03 and 10.05 of the Franchise Agreement and knowingly under-reported and withheld reporting of his Gross Sales.

### Failed Evaluations and "F" Ranking

45. On July 30, 2014, and February 10, 2015, Defendant failed two Operational Evaluations for the Restaurant, scoring less than 50% on each. Each of these failures identified numerous instances where Defendant failed to comply with IHOP's Operations Bulletins in violation of section 10.03 and 10.05 of the Franchise Agreement.

46. On November 12, 2014, and February 4, 2015, Defendant failed to two consecutive Operational Assessment Reports. Each of these failures included numerous

violations of IHOP's Operations Bulletins and demonstrated Defendant's repeated failure to abide by his obligations under the Franchise Agreement.

47.     Under IHOP's ranking system for franchisees, known as the A/B Rating System, Defendant received an "F" ranking, the lowest possible ranking, for the second half of 2014.

### Knowingly Under-Reporting and Withholding Reporting of Gross Sales

48.     On November 13, 2014, IHOP conducted an unannounced field audit of Defendant's Restaurant, including a review of Defendant's historical records relating to sales at the Restaurant.

49.     The audit revealed that between January 2009 and May 2012 Defendant manipulated the point-of-sale records and recorded over 1,000 Negative Guest Checks.  A Negative Guest Check essentially acts as a refund within a restaurant's point-of-sale system and reduces the gross sales of a restaurant.  Some of the individual Negative Guest Checks discovered during the audit exceeded over a $1,000 and, in some cases, exceeded $10,000.  In total, using the Negative Guest Checks, Defendant under-reported or failed to report over $250,000 in sales.

50.     After IHOP confronted Defendant about the under-reporting and Negative Guest Checks, Defendant confirmed that he was the only person who had access to the Restaurant's point-of-sale system and, in doing so, confirmed he knowingly under-reported the Gross Sales for the Restaurant.

### Notice of Default and Termination

51.     On February 20, 2015, IHOP sent Defendant, via certified mail, Federal Express, and e-mail, a notice of termination (the "Notice of Termination") effective March 7, 2015.  A true and correct copy of the Notice of Termination is attached to this Complaint as **Exhibit E**

and is fully incorporated by reference. The Notice of Termination requested, among other things, that Defendant surrender possession of the premises of the Restaurant.

## **Defendant's Infringement of the Marks Following Termination**

52.     After receiving the Notice of Termination, Defendant contacted IHOP, disputed on the Negative Guest Checks, and, later, through counsel, confirmed that he did not intend to cease operation of the Restaurant and would not surrender the Restaurant's premises to IHOP.

53.     Despite the proper Notice of Termination, Defendant will continue and/or has continued to operate the Restaurant under the Marks and has refused to surrender possession of the premises. Defendant will continue and/or has continued to pass off the Restaurant and the goods and services offered by Defendant as being authorized by IHOP when in fact they are not.

54.     Defendant's use of the Marks is without license or consent of IHOP and has caused and/or will cause, and is likely to cause, mistake, confusion, or deception in the minds of the public as to the source, affiliation, and sponsorship of the Restaurant and the goods and services offered there.

55.     Defendant offers identical or substantially identical goods and services through its restaurant as are offered by IHOP's authorized franchisees. As such, the goods and services Defendant provides using the Marks are offered to the same class of consumers as those who patronize authorized IHOP® restaurants. Upon seeing Defendant's unauthorized use of the familiar and well-known Marks, consumers are likely to be deceived into concluding that the Restaurant, and the goods and services offered and sold therein, are subject to IHOP's supervision, are sponsored or endorsed by IHOP, and bear the Marks pursuant to IHOP's authority and permission.

56.     So long as Defendant continues to use the Marks in connection with the unauthorized operation of the Restaurant, consumers have no practical way of knowing that Defendant is no longer affiliated with, or sponsored, authorized, or endorsed by IHOP, and is operating the Restaurant without IHOP's authorization.  As a result, any consumer dissatisfaction with the Restaurant, or with the goods and services offered in connection therewith, is likely to be attributed to IHOP and its authorized franchised restaurants.

57.     Defendant has received actual notice of its violation and infringement of the Marks and has constructive notice of IHOP's rights in the Marks and the registrations thereof pursuant to 15 U.S.C. § 1072.  Defendant's continued infringement is willful, malicious, fraudulent, and deliberate.

### Defendant's Interference with IHOP's Property Rights

58.     Since receiving the Notice of Termination, Defendant has failed and/or refused to surrender possession of the Restaurant's premises to IHOP.  Defendant is holding over and/or will hold over in breach of the Franchise Documents and without legal authority.

59.     IHOP has the legal right to make productive use of its property.  Defendant's refusal to surrender possession of the property is interfering with and abrogating the property rights of IHOP, and this interference constitutes irreparable harm.

60.     Under the Sublease, Defendant leased the Restaurant's premises, and IHOP is authorized to take possession of the Restaurant's premises in the event of termination.

61.     Defendant has breached the Franchise Documents and refused to cure and/or is not permitted to cure those breaches, and IHOP's proper termination of the Franchise Documents ended any rights Defendant had to possess the premises and retain and use the equipment covered by the Franchise Documents.

62.     IHOP has at all times complied with and fully performed its obligations under the Franchise Documents.  IHOP was entitled to terminate the Franchise Documents.

## CLAIMS FOR RELIEF

## CLAIM I

### (Breach of Contract - Franchise Documents)

63.     IHOP incorporates the preceding Paragraphs as if fully set forth herein.

64.     IHOP has performed, or stood willing to perform, all or substantially all of the obligations required of it under the Franchise Documents, or IHOP was excused from such performance.

65.     All conditions required by the Franchise Documents for Defendant's performance have occurred or were excused.

66.     Defendant has breached the Franchise Documents by, among other things, (1) repeatedly failing to comply with IHOP's Operations Bulletins, (2) knowingly under-reporting or failing to report Gross Sales for the Restaurant, and (3) failing to perform his obligations following IHOP's proper termination of the Franchise Documents (i.e., failing or refusing to surrender the premises  and equipment to IHOP, and by continuing operation of the Restaurant using IHOP's Marks and system).

67.     As a result of Defendant's breaches of the Franchise Documents, IHOP has been deprived of the benefits to which it is entitled under the Franchise Documents.

68.     As a direct and proximate result of Defendant's breaches, IHOP has suffered harm and damages.  Monetary damages, however, are an inadequate remedy at law for Defendant's breaches, and IHOP therefore is entitled to injunctive relief and/or specific performance, in addition to damages.

69.     Pursuant to Section 16.11 of the Franchise Agreement, IHOP is entitled to recover its attorneys' fees and costs incurred in this action.

### CLAIM II

### (Ejectment)

70.     IHOP incorporates the preceding Paragraphs as if fully set forth herein.

71.     As the holder of a leasehold interest in the Restaurant's premises, IHOP has a legal and equitable interest in the Restaurant's premises.

72.     Prior to entering into the Sublease with Defendant, IHOP had actual or constructive possession of the Restaurant's premises.

73.     Under the terms of the Sublease, IHOP subleased the Restaurant's premises to Defendant, and Defendant took possession of the premises.

74.     The Sublease was terminated pursuant to a validly issued and served Notice of Termination.

75.     Upon termination of the Sublease, Defendant's sub-tenancy was terminated, and he was obligated to surrender the Restaurant's premises to IHOP.

76.     Defendant has refused to and/or confirmed he will not surrender the Restaurant's premises to IHOP and is occupying the Restaurant's premises without legal right and is a trespasser.

77.     By failing to relinquish possession of the Restaurant, Defendant is unlawfully holding over his tenancy and is unlawfully in possession of the Restaurant's premises and denying IHOP possession of the premises.  IHOP is  entitled to an order ejecting Defendant from the Restaurant's premises and directing Defendant to surrender possession of the Restaurant to IHOP.

78.     As a result of Defendant's actions, IHOP has suffered and will continue to suffer damages and irreparable injury, including, but not limited to, the inability to exploit, use, and enjoy their leasehold interest in the Restaurant's premises.

## CLAIM III

**(Trademark Infringement - 15 U.S.C. § 1114 of the Lanham Act)**

79.     IHOP incorporates the preceding Paragraphs as if fully set forth herein.

80.     Following IHOP's termination of the Franchise Documents, Defendant has continued and/or will continue without IHOP's consent, to use the Marks in commerce or in connection with the sale, offering of sale, distribution, and/or advertising of goods and services. Defendant has done and/or will do so by, among other things, continuing to operate the Restaurant using the Marks on signage and menus.  Such use of the Marks, without IHOP's permission or authority, is likely to cause confusion, or to cause mistake, or to deceive the public as to Defendant's status as an IHOP® franchisee and approval or authorization by IHOP, and, upon information and belief, is so intended by Defendant.

81.     The foregoing conduct is likely to confuse the public into believing Defendant's continued use of the Marks is authorized by IHOP and that Defendant's operation of the Restaurant is authorized by IHOP.

82.     IHOP has no plain, speedy, and adequate remedy at law and is suffering irreparable injury as a result of the foregoing acts of trademark infringement by Defendant, including damages to its business reputation and goodwill.  IHOP is entitled to an injunction pursuant to 15 U.S.C. § 1116(a).  Unless Defendant is enjoined, Defendant will continue to infringe the Marks and cause irreparable injury to IHOP from deprivation of the goodwill associated with the Marks.

83.     IHOP has suffered, and will continue to suffer damages as a result of Defendant's infringement of the Marks, including damage to its business reputation and goodwill.  IHOP is entitled to recover any and all profits Defendant has made as a result of its wrongful conduct, any damages sustained by IHOP, and the costs of this action.  The damages should be trebled pursuant to 15 U.S.C. § 1117(a) and 15 U.S.C. § 1117(b).  In the alternative, IHOP is entitled to statutory damages pursuant to 15 U.S.C. § 1117(c).

84.     IHOP is entitled to attorneys' fees pursuant to 15 U.S.C. § 1117(a) and 15 U.S.C. § 1117(b).

## CLAIM IV

### (Unfair Competition - 15 U.S.C. § 1125(a) of the Lanham Act)

85.     IHOP incorporates the preceding Paragraphs as if fully set forth herein.

86.     Defendant has used and/or will use, without authorization, in commerce the Marks, and/or has made and/or will make misleading descriptions of fact, or misleading representations of fact, which are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with IHOP, and/or as to the origin, sponsorship, or approval of Defendant's goods and services, or commercial activities.

87.     Defendant's acts have been committed with knowledge of IHOP's exclusive rights and goodwill in the Marks, as well as with bad faith and the intent to cause confusion, or to cause mistake and/or to deceive.

88.     The foregoing conduct is likely to confuse the public into believing that Defendant's operation of the Restaurant is approved by, sponsored by, or affiliated with IHOP, in violation of 15 U.S.C. § 1125(a).

89.     IHOP has no plain, speedy, and adequate remedy at law and is suffering irreparable injury as a result of the foregoing acts of unfair competition by Defendant. IHOP is entitled to an injunction pursuant to 15 U.S.C. § 1116(a). Unless Defendant is enjoined, Defendant will continue to infringe the Marks, unfairly compete, and cause irreparable injury to IHOP from deprivation of the goodwill associated with the Marks.

90.     IHOP has suffered and will continue to suffer damages as a result of Defendant's acts of unfair competition, including damage to its business reputation and goodwill. IHOP is entitled to recovery of any and all profits Defendant has made as a result of its wrongful conduct, any damages sustained by IHOP, and the costs of this action. The damages should be trebled pursuant to 15 U.S.C. § 1117(a) and 15 U.S.C. § 1117(b). In the alternative, IHOP is entitled to statutory damages pursuant to 15 U.S.C. § 1117(c).

91.     IHOP is entitled to attorneys' fees pursuant to 15 U.S.C. § 1117(a) and 15 U.S.C. § 1117(b).

WHEREFORE, IHOP respectfully prays for judgment in its favor and against Defendant for:

a.     A temporary-restraining order and a preliminary and permanent injunction enjoining Defendant from:

   (1)     using the Marks or any trademark, service mark, logo, or trade name that is confusingly similar to the Marks;

   (2)     otherwise infringing the Marks or using any similar designation, alone or in combination with any other component;

   (3)     passing off any of its goods or services as those of IHOP or IHOP's authorized franchisees;

      (4)      causing likelihood of confusion or misunderstanding as to the source or sponsorship of its business, goods, or services;

b.      a temporary-restraining order and a preliminary and permanent injunction directing that Defendant surrender possession of and be ejected from the Restaurant's premises and facilities and surrender to IHOP the equipment subject to the Equipment Lease;

c.      an Order requiring Defendant to file with the Court and to serve upon IHOP's counsel within ten (10) days of entry of any injunction or order issued herein, a written report, under oath, setting forth in detail the manner in which he has complied with such injunction or order;

d.      an Order following the entry of a preliminary injunction staying this litigation so that the parties may pursue arbitration of the underlying claims in accordance the Franchise Agreement;

e.      such damages as IHOP has sustained by reason of Defendant's trademark infringement and unfair competition and, because of Defendant's willful conduct, a judgment for IHOP for three times the amount of said damages, pursuant to 15 U.S.C. § 1117;

f.      such damages, to the extent that are recoverable in this action, as IHOP has sustained as a result of Defendant's breaches of the Franchise Documents;

g.      the costs and expenses, including reasonable attorneys' fees, incurred by IHOP in connection with this action;

h.      pre-judgment and post-judgment interest; and

i.      such other relief as the Court deems just and proper.

Dated: March 5, 2015

Respectfully submitted,

DENTONS US LLP

By: ___/s/ Robert H. King, Jr.___
    Robert H. King, Jr., ARDC No. 3122382
    233 South Wacker Drive, Ste. 7800
    Chicago, Illinois 60606
    Tel: (312) 876-8000
    Fax: (312) 876-7934
    Email: robert.kingjr@dentons.com

    Brian P. Baggott (to be admitted *pro hac vice*)
    4520 Main Street, Ste. 1100
    Kansas City, Missouri 64111
    Tel: 816-460-2400
    Fax: 312-531-7545
    Email: brian.baggott@dentons.com

    Joel D. Siegel (to be admitted *pro hac vice*)
    601 S. Figueroa Street, Ste. 2500
    Los Angeles, CA 90017
    Tel: 213-623-9300
    Fax: 213-623-9924
    Email: joel.siegel@dentons.com

**ATTORNEYS FOR PLAINTIFFS**